JOSHUA A. BASKIN, State Bar No. 294971
CHRISTINE AU-YEUNG, State Bar No. 294196
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: jbaskin@wsgr.com
cauyeung@wsgr.com

Attorneys for Plaintiff
Superhuman Platform Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUPERHUMAN PLATFORM INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>1mind AI, Inc., a Delaware corporation,<br><br>Defendant. | Case No.: 3:26-cv-11711<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, LANHAM ACT VIOLATIONS, UNLAWFUL AND UNFAIR BUSINESS PRACTICES, AND RELATED CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Superhuman Platform Inc. ("Superhuman" or "Plaintiff") hereby brings this Complaint against 1mind AI, Inc. ("1mind") and alleges as follows:

**INTRODUCTION**

1. This action arises out of 1mind's unauthorized use of the SUPERHUMAN trademark for AI services that are highly similar to, and compete with, Superhuman's own, and out of 1mind's attempts to register that mark for itself.

2. Plaintiff Superhuman offers an AI productivity platform that brings AI to wherever people work. Plaintiff Superhuman's AI tools aid professionals with all aspects of their businesses, including sales and customer relationship management.

3. Superhuman has used the SUPERHUMAN mark continuously since at least January 2017. Indeed, since 2019, Superhuman has owned a trademark registration for the mark for, among other goods and services, "providing business information in the field of productivity and efficiency enhancement" and "customer relationship management." *See* Registration No. 5675657, attached as **Exhibit A**. That registration is now incontestable.

4. Since at least 2017, Superhuman has marketed its platform as using AI. Among other things, Superhuman's AI offerings assist companies through their entire sales cycle as well as with customer support. By August 2023, Superhuman was marketing SUPERHUMAN to "high performing sales teams" to help them "close more deals and exceed [their] revenue targets" with features like "embedded CRM data from Superhuman's Salesforce and HubSpot integrations" and "[f]ollow-up Reminders, Snippets, AI and more." Superhuman, *3 Ways to Improve Sales Email Results with Superhuman* (Aug. 1, 2023), https://blog.superhuman.com/sales-email-results/. By May 2024, Superhuman was marketing its AI-powered offering to help sales teams "save time and close more deals" and "move faster and collaborate more effectively." Superhuman, *How to Boost Sales Rep Productivity with Salesforce & Superhuman* (May 27, 2024), https://blog.superhuman.com/improve-sales-productivity-superhuman-salesforce/. Specifically, Plaintiff was advertising SUPERHUMAN features that (1) draft replies, "using Superhuman AI to prepare a full draft in their own voice, from just a few phrases"; (2) follow up at key moments, by setting "a Reminder to follow up in 2 days"; (3)

centralize deal knowledge, because "Superhuman shows Salesforce contacts, leads, accounts, and opportunities right inside your inbox"; and (4) connect to their sales systems, because "[r]eps can update Salesforce from Superhuman, making CRM hygiene seamless." *Id.* In July 2024, Superhuman launched "Superhuman for Sales, with collaborative workflows, artificial intelligence tools, and more." *Superhuman Launches Superhuman for Sales*, destinationCRM (July 25, 2024), https://www.destinationcrm.com/Articles/CRM-News/CRM-Across-the-Wire/Superhuman-Launches-Superhuman-for-Sales-165096.aspx. Superhuman continues to market its AI suite to sales teams today, offering "the right AI agent for every part of the deal cycle." *See* https://superhuman.com/teams/sales.

5. Because of its substantial and long-term presence in the marketplace, and based on the goodwill Plaintiff Superhuman has generated through its own significant marketing efforts, enterprise customers and professionals associate the trademark SUPERHUMAN with AI-powered productivity services that aid enterprise users in all aspects of their jobs, including sales, marketing, and customer relationship management.

6. 1mind is a new company that seeks to free-ride on Plaintiff Superhuman's success. In or around June 2025, 1mind publicly announced a "Superhuman"-branded AI platform directed at the same enterprise functions as Superhuman, including sales and customer relationship management. *See* 1mind, *The Future of AI* (June 26, 2025), https://www.1mind.com/announcements/the-future-of-ai (introducing "Superhumans" to help enterprises "[s]cale revenue with greater efficiency and consistency"). Just as Superhuman's offering "turns every rep into your best," 1mind's "Superhuman" "scales your best [customer success manager] to every account." *Compare* https://superhuman.com/teams/sales, *with* https://www.1mind.com/use-cases/customer-success.

<table>
<tr>
<td>Superhuman</td>
<td>
</td>
</tr>
<tr>
<td>1mind</td>
<td>
</td>
</tr>
</table>

7. 1mind markets its "Superhuman"-branded offering to Superhuman's customers. 1mind's "Superhuman" is "built for B2B revenue teams, including sales, marketing, customer success, product-led growth, and go-to-market teams," and able to "qualify leads, answer product questions, deliver demos, handle objections, support live sales calls, and help move buyers through the sales process." *See* https://www.1mind.com. In short, both parties use the SUPERHUMAN mark with respect to AI offerings that help sales representatives through the entire sales cycle.

8. 1mind's "Superhuman" itself confirms 1mind's infringement of the SUPERHUMAN mark. When a prospective customer visits 1mind's website, 1mind's chatbot, "Superhuman," offers to "help you figure out where a 1mind Superhuman could create revenue

leverage for your team." Asked whether it can help with customer relationship management, it answers: "Yes, especially around turning CRM from a record-keeping system into an action system." Asked about the same capabilities that Superhuman offers (*see* ¶ 4, *supra*), it responds that (1) for "deal-context replies, the Superhuman can use conversation history, CRM context, and approved knowledge to shape the follow-up"; (2) "follow-up can be triggered when a lead engages, shares intent, or hits a meaningful qualification signal"; (3) "1mind can ingest your sales enablement docs, website content, CRM context, call recordings, RFP responses, and past AI conversations so your Superhuman has one always-updating GTM brain"; and (4) "1mind can read and write to CRM and marketing systems."

9. In other words, the services provided by 1mind mirror those Plaintiff Superhuman offers under the SUPERHUMAN mark. And Superhuman was marketing these same AI-powered features long before 1mind launched.

10. In June 2025, upon learning that 1mind had filed a trademark application for SUPERHUMAN, and had begun to use the term "SUPERHUMAN" in conjunction with its offerings, Plaintiff promptly contacted 1mind for a business-level discussion and subsequently put 1mind on notice of its pre-existing use of the SUPERHUMAN mark. Plaintiff also made clear during its business discussions with 1mind that its SUPERHUMAN-branded offerings were expanding further into AI, including further use of AI agents. 1mind therefore knew not only that Plaintiff had longstanding rights in the mark SUPERHUMAN, but also that Plaintiff was expanding those offerings further into the space that 1mind sought to enter under the identical mark. 1mind refused to change course and instead doubled down by filing a second, broader trademark application for SUPERHUMAN in July 2025.

11. Over the ensuing months, Plaintiff nevertheless attempted in good faith to resolve the dispute amicably through commercial negotiations rather than resorting to litigation. Those efforts were unsuccessful. In December 2025, faced with a deadline, Plaintiff filed an opposition against 1mind's first application for the mark SUPERHUMAN (Serial No. 98880288) before the Trademark Trial and Appeal Board ("TTAB"). Even then, 1mind did not change course and continued to infringe Plaintiff Superhuman's trademark rights. Left with no other choice, Plaintiff

now brings this action to stop 1mind's ongoing, infringing use of SUPERHUMAN and prevent consumer confusion.

## THE PARTIES

12. Plaintiff Superhuman Platform Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

13. On information and belief, 1mind AI, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

## JURISDICTION AND VENUE

14. This action for trademark infringement, false designation of origin, unfair competition, false advertising, and related claims arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, including 15 U.S.C. §§ 1114, 1119, and 1125(a), as well as the statutory and common law of the State of California.

15. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Lanham Act. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a) because those claims are so related to the Lanham Act claims that they form part of the same case or controversy. This Court also has jurisdiction over the state unfair competition claims under 28 U.S.C. § 1338(b) because they are joined with substantial and related claims under the federal trademark laws.

16. This Court has personal jurisdiction over 1mind because, on information and belief, 1mind resides in and maintains its principal place of business in this District. 1mind also conducts substantial business, including developing, testing, and marketing its goods and services, in the State of California and in this District. 1mind markets its SUPERHUMAN-branded platform and services directly to consumers, including consumers in California, through its website, 1mind.com, which is available to users in this District. 1mind's Terms of Use on its website, located at https://www.1mind.com/terms-of-use, are governed by California law.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (c)(2), and (d) because 1mind resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims stated in this Complaint occurred in this District.

## DIVISIONAL ASSIGNMENT

18. Pursuant to Civil L.R. 3-2(c) and General Order No. 44, this intellectual property action is subject to district-wide assignment and therefore is not subject to assignment to a particular division.

## FACTUAL BACKGROUND

***Superhuman and Its Business***

19. Plaintiff's predecessor-in-interest, Superhuman Labs, Inc. ("Superhuman Labs"), was founded in 2014 and launched publicly in 2016. Unless otherwise noted, references to "Superhuman" include Superhuman Labs. Superhuman launched its website at superhuman.com in October 2016, through which it has since promoted and offered its electronic communications and related software products. Superhuman's offering has been used by consumers located throughout the United States, and the SUPERHUMAN brand has developed significant brand recognition and goodwill.

20. By 2017, Superhuman was marketing features that utilize AI on its superhuman.com homepage. Over the years, Superhuman has steadily and continually expanded its AI offerings. In May 2023, Superhuman launched a suite of AI-powered features under the SUPERHUMAN mark designed to assist professionals with various aspects of their businesses, including, for example, a "polish your writing" feature that enables users to "fix spelling and grammar, improve clarity, change length, and more." *See* Superhuman, *Superhuman AI* (May 3, 2023), https://blog.superhuman.com/superhuman-ai/ (announcing "Superhuman AI — a suite of new AI features"). Superhuman expanded those AI features throughout 2023 and 2024, adding, for example, an "auto-summarize feature" and extending its AI functionality to its iPhone and iPad apps. Ivan Mehta, *Superhuman Launches AI-Powered Instant Replies*, TechCrunch (Feb. 27, 2024), https://techcrunch.com/2024/02/27/superhuman-launches-an-ai-powered-instant-replies-feature/. Today, Superhuman's AI platform continues to help sales and marketing organizations with all aspects of customer relationship management, including allowing sales teams to "centralize sales knowledge," "track every deal in real time," "[d]raft replies in seconds, grounded

in real deal context," and "[n]ever miss a follow-up, with automatic nudges and reminders," and manage customer support. *See* https://superhuman.com/teams/sales.

21. Superhuman publicly disclosed its plans for AI agents well before 1mind filed its first SUPERHUMAN application. In February 2024, TechCrunch reported Superhuman's plan that the "third phase" of its AI product "will replace certain parts of a user's daily workflow like using an AI agent for scheduling or writing full emails on their behalf." Ivan Mehta, *Superhuman Launches AI-Powered Instant Replies*, TechCrunch (Feb. 27, 2024), https://techcrunch.com/2024/02/27/superhuman-launches-an-ai-powered-instant-replies-feature/. In June 2024, Superhuman told its customers: "Imagine an AI agent that schedules meetings, triages your inbox, and even drafts fully written emails on your behalf!" Superhuman, *Superhuman 2.0* (June 20, 2024), https://blog.superhuman.com/superhuman-2-0/. In addition, as Superhuman shared with 1mind during discussions in 2025, Superhuman's AI platform now provides customers with virtual AI agents to aid in their productivity.

22. Plaintiff Superhuman's services are marketed and used as a sales and revenue tool. Plaintiff launched a dedicated sales edition, Superhuman for Sales, in July 2024. *Superhuman Launches Superhuman for Sales*, destinationCRM (July 25, 2024), https://www.destinationcrm.com/Articles/CRM-News/CRM-Across-the-Wire/Superhuman-Launches-Superhuman-for-Sales-165096.aspx. Superhuman promotes "Superhuman for Sales" as an AI suite that supports sales representatives and leaders across the entire sales cycle, and its enterprise customers use Superhuman to sell, as shown on Plaintiff's website. *See* https://superhuman.com/teams/sales. Sales customers have publicly praised SUPERHUMAN for years. In May 2024, for example, Superhuman published a partnerships executive's statement that Superhuman "is the one stop for everything I need to do as a salesperson," and a sales vice president's statement that Superhuman helps them "close more deals, faster." Superhuman, *How to Boost Sales Rep Productivity with Salesforce & Superhuman* (May 27, 2024), https://blog.superhuman.com/improve-sales-productivity-superhuman-salesforce/. And as early as January 2024, Superhuman reported that "[s]ales teams on Superhuman use Snippets to move faster and be 2x more responsive." Superhuman, *12 Superhuman Email Snippets for Customer-*

*Facing Teams* (Jan. 18, 2024), https://blog.superhuman.com/12-superhuman-email-snippets-for-sales-teams/. As discussed below, 1mind markets its competing SUPERHUMAN offering to these same revenue teams, for these same purposes, resulting in a likelihood of confusion.

23. In 2025, Grammarly, Inc. acquired Superhuman Labs and all of Superhuman Labs' trademark rights and registrations, including Registration No. 5675657. Grammarly thereafter announced its rebrand to Superhuman Platform Inc. Plaintiff separately acquired U.S. Registration No. 3941705 by assignment.

24. Following the acquisition, Plaintiff Superhuman has continued the natural expansion of its AI product offerings by announcing Superhuman Go, which integrates its AI offerings into a single suite and allows customers to access Superhuman's AI services from any application they are using.

***Superhuman's Strong Trademark Rights***

25. Well before 1mind adopted and began promoting itself under the SUPERHUMAN mark, Plaintiff Superhuman was using, and continues to use, the SUPERHUMAN mark in interstate commerce in connection with its electronic communications and related productivity software products. Through continuous use of its SUPERHUMAN house mark since at least as early as January 2017, and sustained investment in promoting it, Superhuman has built strong common law rights in that mark. This investment includes millions of dollars in marketing spend promoting products and services under the SUPERHUMAN mark and has generated millions of dollars in sales of products and services under the SUPERHUMAN mark, use by well-known companies such as Zoom and OpenAI, and substantial press attention and awards.

26. Plaintiff Superhuman also owns United States trademark registrations for SUPERHUMAN (U.S. Reg. No. 5675657 in Classes 35, 38, and 41) and SUPERHUMAN PLATFORM (U.S. Reg. No. 3941705 in Class 42) (collectively, the "SUPERHUMAN Registrations"). True and correct copies of the registration certificates for the SUPERHUMAN Registrations are attached hereto as **Exhibit A** and incorporated by reference herein.

27. The SUPERHUMAN Registrations are valid and subsisting, are in full force and effect, and constitute *prima facie* evidence of the validity of the registered marks, of

Superhuman's ownership of the marks, and of Superhuman's exclusive right to use the marks in commerce in connection with the goods and services identified therein, pursuant to 15 U.S.C. §§ 1057(b) and 1115(a). Registration No. 5675657 has become incontestable under 15 U.S.C. § 1065 and is therefore conclusive evidence of the validity of the registered mark, of Superhuman's ownership of it, and of Superhuman's exclusive right to use it in commerce for the registered services, pursuant to 15 U.S.C. § 1115(b).

28. Superhuman also owns a pending U.S. trademark application for SUPERHUMAN, filed on June 26, 2025, and claiming a first use in commerce at least as early as January 31, 2017 (Serial No. 99254752), and a pending U.S. trademark application for SUPERHUMAN GO, filed on October 28, 2025 (Serial No. 99467445) (collectively, the "SUPERHUMAN Applications").

29. Plaintiff Superhuman has spent substantial time, effort, and resources on the creation, development, promotion, and enforcement of its SUPERHUMAN mark, the SUPERHUMAN Registrations, and the SUPERHUMAN Applications. Through Superhuman's widespread promotion and use, the SUPERHUMAN, SUPERHUMAN PLATFORM, and SUPERHUMAN GO marks (collectively, the "SUPERHUMAN Marks") have become strong and widely recognized in the electronic communications and productivity software field. Consumers have come to know, identify, and recognize software products marketed in association with the marks SUPERHUMAN, SUPERHUMAN PLATFORM, and SUPERHUMAN GO as goods and services originating solely with, or authorized by, Superhuman. Over 50,000 organizations have used Superhuman's products and services. Accordingly, Superhuman has established tremendous goodwill in its SUPERHUMAN Marks.

30. Plaintiff has received widespread national press and recognition regarding its SUPERHUMAN email, communications, and AI-native productivity software. For example, Plaintiff Superhuman has been featured in prominent publications such as *Business Insider*, *Yahoo! Finance*, *TechCrunch*, *Fox Business*, *The Verge*, and *AI Business*, among others.

31. Plaintiff Superhuman's trademark rights in SUPERHUMAN long predate any date of first use on which 1mind may rely.

***1mind's Infringing Activity***

32. On December 2, 2024, 1mind filed an intent-to-use application under Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), to register SUPERHUMAN in connection with "providing temporary use of online non-downloadable computer chatbot software for simulating conversations" in Class 42 (U.S. Serial No. 98880288). 1mind did not list a first use date or a first use in commerce date in that application because, on information and belief, 1mind had not used the SUPERHUMAN mark as of December 2, 2024. On information and belief, 1mind filed this application with knowledge that Superhuman had previously used the SUPERHUMAN mark and with knowledge of Superhuman's superior rights in the SUPERHUMAN mark. Plaintiff has opposed that application before the TTAB (Opposition No. 91303682). In its October 7, 2026, Answer in that proceeding, 1mind admitted that this application "was filed with actual knowledge of" Plaintiff's SUPERHUMAN Registrations.

33. In 2025, Superhuman became aware of, and immediately concerned about, 1mind's planned use. In June 2025, Superhuman invited 1mind to have a business-level discussion regarding its use of SUPERHUMAN and requested that 1mind cease its planned use of SUPERHUMAN as a trademark going forward. In the months that followed, Plaintiff attempted to resolve the dispute amicably through business negotiations, rather than resorting to litigation.

34. 1mind refused to reach a compromise and instead doubled down. Shortly after Superhuman contacted it, in July 2025, 1mind filed a second, broader trademark application for the SUPERHUMAN mark (U.S. Serial No. 99303350). The second application seeks to register SUPERHUMAN for, among other things, "Providing temporary use of on-line non-downloadable cloud computing software for creating virtual AI agents" and "Downloadable computer software for creating virtual AI agents." As discussed above, and as 1mind knew at the time, Superhuman's offerings also include AI agents. 1mind filed the second application with knowledge that Superhuman had previously used the SUPERHUMAN mark and with knowledge of Superhuman's superior rights in the SUPERHUMAN mark.

35. 1mind, with actual and constructive knowledge of Superhuman's prior use of the distinctive SUPERHUMAN mark, and in violation of Superhuman's trademark rights, adopted and began using the identical SUPERHUMAN mark in connection with promoting its AI

communication software and services.

36. Since that time, 1mind has promoted and marketed its AI software in connection with the SUPERHUMAN mark to enterprise and mid-market business-to-business software and technology companies, including on its website at 1mind.com and through social media platforms such as LinkedIn and YouTube.

37. 1mind uses SUPERHUMAN as a brand to identify the source of its offerings. For example, 1mind's website invites visitors to "Talk to a Superhuman"; names its offerings the "1mind Ride-Along Superhuman," the "1mind In-Product Superhuman," and the "1mind Customer Success Superhuman"; touts "more than 100+ Superhuman deployments"; and defines 1mind's "Platform" in its Terms of Use as "1mind's proprietary, enterprise-level AI Superhuman platform." *See* https://www.1mind.com; https://www.1mind.com/customer-superhumans; https://www.1mind.com/terms-of-use. And 1mind has twice applied to register SUPERHUMAN as a trademark. *See* ¶¶ 32, 34, *supra*.

38. 1mind has taken significant steps to market its SUPERHUMAN-branded offering, including via numerous press releases, social media posts, and videos. 1mind's promotional efforts and the press it has received have both increased in recent months. Indeed, 1mind's infringing use of SUPERHUMAN to identify its offerings and brand is pervasive:









*See* https://www.1mind.com.

39. As shown above, 1mind prominently markets its SUPERHUMAN-branded offering on its 1mind.com website. Prospective customers can ask 1mind's Superhuman questions about its capabilities. Those answers, and 1mind's own website marketing, show that 1mind's SUPERHUMAN-branded offering competes directly with Plaintiff Superhuman's offerings for sales and customer relationship management, because 1mind's offering, like Plaintiff Superhuman's, supports the full customer lifecycle by offering the same features that Superhuman offered under the SUPERHUMAN mark before 1mind filed its first SUPERHUMAN application on December 2, 2024:

| **Superhuman** | **1mind "Superhuman" (1mind.com)** |
|---|---|
| "Sends a personalized follow-up email, using Superhuman AI to prepare a full draft in their own voice, from just a few phrases."<br><br>Superhuman, *How to Boost Sales Rep Productivity with Salesforce & Superhuman* (May 27, 2024) | "Follows up on inbound leads automatically, in your systems or ours."<br><br>1mind, *Website Inbound*, https://www.1mind.com/use-cases/website-inbound |

| Superhuman | 1mind "Superhuman" (1mind.com) |
|---|---|
| "Superhuman for Sales has a feed of recent email opens, so you can follow up with prospects when you're top of mind and they have the highest intent . . . ."<br><br>Superhuman, *3 Ways to Improve Sales Email Results with Superhuman* (Aug. 1, 2023) | "Qualifies intent and routes high-intent buyers to the right next step."<br><br>1mind, *Website Inbound*, https://www.1mind.com/use-cases/website-inbound |
| "Having critical deal information available at a glance saves time, reduces distractions, and helps craft precise and personal outreach quickly."<br><br>Superhuman, *How to Boost Sales Rep Productivity with Salesforce & Superhuman* (May 27, 2024) | "A 1mind Superhuman runs on 1 Brain that remembers every conversation, from the first website visit through renewal."<br><br>1mind, *Use Cases*, https://www.1mind.com/use-cases |
| "[S]ales reps can maintain an up-to-date CRM at Superhuman speed, without breaking flow or switching context."<br><br>Superhuman, *How to Boost Sales Rep Productivity with Salesforce & Superhuman* (May 27, 2024) | "Writes structured qualification back to your CRM after every conversation."<br><br>1mind, *Website Inbound*, https://www.1mind.com/use-cases/website-inbound |
| Users "can comment directly on emails and share a live view of the email, including past and future messages, on the same conversation with teammates, who can then review and comment with full context."<br><br>*Superhuman Launches Superhuman for Sales*, destinationCRM (July 25, 2024) | A 1mind Superhuman "[c]arries full account context" "[f]rom first touch through post-sale, on one Brain — never starting cold."<br><br>1mind, *Customer Success*, https://www.1mind.com/use-cases/customer-success |
| Superhuman launched "an auto-summarize feature, which shows a one-line summary on top of your emails."<br><br>Mehta, *Superhuman Launches AI-Powered Instant Replies*, TechCrunch (Feb. 27, 2024) | "Captures key signals and generates structured summaries, giving revenue teams actionable insights after every conversation."<br><br>1mind, *1mind Launches Ride-Along* (May 19, 2026), https://www.1mind.com/announcements/1mind-launches-ride-along-with-the-industrys-first-ai-that-joins-live-sales-calls-as-a-visible-named-sales-engineer-speaking-directly-to-buyers |

40. Plaintiff Superhuman has not licensed or otherwise authorized 1mind's use of the SUPERHUMAN mark, or any other mark containing the term SUPERHUMAN.

41. 1mind's adoption and use of the SUPERHUMAN mark, and its promotion of goods and services under the SUPERHUMAN mark (including in the form "SUPERHUMANS"),

infringe Plaintiff's distinctive SUPERHUMAN mark and the SUPERHUMAN Registrations. 1mind's SUPERHUMAN mark is identical to Plaintiff's SUPERHUMAN mark.

***1mind's Use of SUPERHUMAN Is Likely to Cause Confusion in the Marketplace***

42. 1mind's adoption of the identical SUPERHUMAN mark is likely to cause confusion in the marketplace among the parties' actual and prospective customers. As described above, Plaintiff Superhuman and 1mind offer services under the identical SUPERHUMAN mark that serve the same types of customers, offer the same features, and have integrations with the same customer relationship management platforms. In addition, 1mind's services fall squarely within Plaintiff Superhuman's natural zone of expansion.

43. The marks are not merely similar; they are identical in sight, sound, and meaning. That identity weighs heavily in favor of a likelihood of confusion.

44. The parties offer closely related, and in material respects overlapping, goods and services. Plaintiff has long used SUPERHUMAN for AI-powered features that support sales teams and customer relationship management. *See* ¶¶ 4, 20–22, *supra*. Plaintiff owns an incontestable trademark registration for SUPERHUMAN for "customer relationship management." *See* **Exhibit A**. 1mind offers the same services in the same field. Both parties' offerings deploy conversational AI to communicate with and assist users. Consumers encountering the identical SUPERHUMAN mark on these related offerings are likely to believe they originate from, or are affiliated with, a common source.

45. Plaintiff's SUPERHUMAN mark is strong. Plaintiff has used the mark continuously since at least 2017, has invested over $50 million in promoting it, and has achieved widespread recognition, including adoption by leading enterprises and repeated recognition in national publications and industry awards. Plaintiff's U.S. Registration No. 5675657 for SUPERHUMAN is incontestable under 15 U.S.C. § 1065 and, under 15 U.S.C. § 1115(b), is conclusive evidence of Plaintiff's exclusive right to use the mark in connection with the registered services. The strength of the SUPERHUMAN mark broadens the scope of protection to which it is entitled and increases the likelihood that consumers will associate 1mind's identical mark with Plaintiff.

46. The parties market their competing SUPERHUMAN offerings through the same channels and to the same customers. Both target enterprise and mid-market business-to-business software and technology companies, and specifically the sales, marketing, customer-success, and revenue-operations teams within those companies; both promote their offerings through their websites, through professional networking platforms such as LinkedIn, and through industry press; and both operate in the same enterprise go-to-market and revenue-operations ecosystem, including alongside platforms such as Salesforce and HubSpot with which both parties' software integrates. *Compare 3 Ways*, *supra* ("Superhuman integrates with Salesforce and HubSpot"), *with* 1mind, *Website Inbound*, https://www.1mind.com/use-cases/website-inbound ("Runs on Salesforce, HubSpot, Dynamics, or Pipedrive."). These overlapping channels of trade increase the likelihood of consumer confusion.

47. 1mind adopted and expanded its use of the identical SUPERHUMAN mark with knowledge that Plaintiff used the SUPERHUMAN mark in the marketplace and with knowledge of Plaintiff's senior rights in the SUPERHUMAN mark. Plaintiff placed 1mind on notice of those rights in or around mid-June 2025, yet 1mind filed a second, broader SUPERHUMAN application. 1mind's decision to proceed under an identical mark, for the same and related services, in the face of Plaintiff's known and senior rights, supports an inference that 1mind intended to trade on the goodwill associated with Plaintiff's SUPERHUMAN mark.

48. The parties' marketing establishes their overlapping focus. Plaintiff promotes SUPERHUMAN directly to sales and marketing teams on its website, superhuman.com—for example, "Superhuman for Sales," which Plaintiff markets as an "AI suite" that "covers the entire sales cycle" for revenue "reps and leaders," and "Superhuman for Marketing." *See* https://superhuman.com/teams/sales; https://superhuman.com/teams/marketing. Superhuman's sales-focused marketing long predates 1mind's adoption of SUPERHUMAN: in 2023, Superhuman described itself as "the secret weapon high-performing sales teams need." *3 Ways*, *supra*. 1mind likewise promotes SUPERHUMAN on its website, 1mind.com, to that same audience, describing its offering as "AI Sales Agents for B2B Revenue Teams," "Superhumans built for Every Revenue Motion," and "One go-to-market Superhuman." *See*

https://www.1mind.com. Both Superhuman and 1mind use the SUPERHUMAN mark for a complete offering to guide the entire sales process.

49. The parties thus use an identical mark to sell competing AI tools to the same enterprise sales and customer relationship management functions.

50. 1mind's use of the SUPERHUMAN mark is affecting and inhibiting, and is likely to continue to affect and inhibit, Plaintiff's ability to promote its SUPERHUMAN, SUPERHUMAN PLATFORM, and SUPERHUMAN GO marks, its business, and its goods and services.

51. 1mind's use of the SUPERHUMAN mark has irreparably injured Plaintiff Superhuman in its business and intellectual property and threatens to continue to irreparably injure Superhuman unless enjoined by this Court. 1mind's conduct has also deprived and will deprive Superhuman of value that rightfully belongs to it through loss of goodwill.

**<u>FIRST CAUSE OF ACTION</u>**

**Infringement of Registered Trademarks**

**Lanham Act § 32, 15 U.S.C. § 1114**

52. Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

53. Plaintiff owns the SUPERHUMAN Registrations, which are valid, subsisting, enforceable, and in full force and effect.

54. 1mind has used the SUPERHUMAN mark in commerce, without Plaintiff's consent, in connection with commercial activities that are highly similar to those of Plaintiff. 1mind's use of a mark that is identical or highly similar to the marks covered by the SUPERHUMAN Registrations, together with the similarity of the parties' commercial activities and other relevant factors, is likely to cause confusion, deception, or mistake among consumers in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

55. As a direct and proximate result of 1mind's wrongful conduct, Plaintiff has been, is now, and will be irreparably injured and damaged, and unless 1mind is enjoined by the Court,

Plaintiff will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

56. 1mind has acted willfully and should be held liable for enhanced damages of up to three times Plaintiff's actual damages, and attorneys' fees pursuant to 15 U.S.C. § 1117(a) in this exceptional case.

## <u>SECOND CAUSE OF ACTION</u>

### False Designation of Origin

### Lanham Act § 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A)

57. Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

58. In addition to the SUPERHUMAN Registrations, Plaintiff owns and enjoys valid, enforceable, and fully subsisting common law trademark rights in the SUPERHUMAN, SUPERHUMAN PLATFORM, and SUPERHUMAN GO marks in California and throughout the United States.

59. Plaintiff has held valid and protectable rights in the SUPERHUMAN mark since prior to 1mind's first use of the SUPERHUMAN mark.

60. 1mind has used the SUPERHUMAN mark in commerce in the United States in connection with the sale, offering for sale, distribution, and promotion of its goods and services. 1mind's use of the identical or highly similar SUPERHUMAN mark in commerce constitutes false designation of origin, as it is likely to cause confusion, or to cause mistake, or to deceive consumers as to an affiliation, connection, or association between Plaintiff Superhuman and 1mind, or as to the origin, sponsorship, or approval of 1mind's goods or services by Superhuman and vice versa.

61. As a direct and proximate result of 1mind's wrongful conduct, Plaintiff has been, is now, and will be irreparably injured and damaged, and unless 1mind is enjoined by the Court, Plaintiff will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

62. As a direct and proximate result of 1mind's use of the identical SUPERHUMAN mark, consumers encountering 1mind's goods and services are likely to mistakenly believe that they originate with, or are affiliated, connected, or associated with, Plaintiff Superhuman, the senior user of the SUPERHUMAN mark. 1mind's use of the SUPERHUMAN mark is likely to cause confusion and constitutes a violation of 15 U.S.C. § 1125(a)(1)(A).

63. On information and belief, 1mind has acted willfully and should be held liable for enhanced damages of up to three times Plaintiff's actual damages, and attorneys' fees pursuant to 15 U.S.C. § 1117(a) in this exceptional case.

## **THIRD CAUSE OF ACTION**

### **Unlawful and Unfair Business Practices**

### **California Business & Professions Code § 17200**

64. Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

65. 1mind's conduct, described above, constitutes unlawful, unfair, or fraudulent business acts or practices and, as such, constitutes unfair competition under California Business & Professions Code § 17200 *et seq.*

66. 1mind's conduct constitutes unlawful and unfair business acts or practices in that 1mind has engaged in trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and unfair competition through using a false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67. 1mind's conduct is independently unfair and fraudulent within the meaning of § 17200. 1mind adopted, expanded, and continues its use of SUPERHUMAN with actual knowledge of Plaintiff's senior rights. 1mind was expressly informed of Plaintiff's rights in June 2025, yet refused to cease its infringing conduct and filed a second and broader application to register SUPERHUMAN. Such knowing and deliberate conduct is oppressive and is likely to deceive members of the public into believing that 1mind's SUPERHUMAN-branded goods and services originate with, or are sponsored, endorsed, or approved by, Plaintiff, when they are not.

68. As a direct and proximate result of 1mind's wrongful and unfair conduct, Plaintiff has been, is now, and will be irreparably injured and damaged, and unless 1mind is enjoined by the Court, Plaintiff will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

69. 1mind has acted willfully, and Plaintiff is entitled to restitution.

**FOURTH CAUSE OF ACTION**

**Deceptive, False, and Misleading Advertising**

**California Business & Professions Code § 17500**

70. Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

71. 1mind's conduct, described above, constitutes false and misleading advertising under California Business & Professions Code § 17500 *et seq.*

72. 1mind has disseminated, and continues to disseminate, advertising and promotional materials throughout California and the United States that prominently feature the SUPERHUMAN mark, including through its website, press releases, social media channels, videos, and promotional coverage. 1mind's use of SUPERHUMAN in this advertising is untrue or misleading because it is likely to cause consumers to believe that 1mind's goods and services originate with, are affiliated or associated with, or are sponsored or approved by Plaintiff. 1mind disseminated this advertising despite its knowledge of Plaintiff's senior rights, of which 1mind had been on notice since mid-June 2025. 1mind thus knew, or in the exercise of reasonable care should have known, that its advertising was untrue or misleading.

73. Superhuman has held valid and protectable rights in the SUPERHUMAN mark since prior to 1mind's first use of the SUPERHUMAN mark.

74. 1mind had actual knowledge of Plaintiff's ownership and use of the SUPERHUMAN mark prior to its adoption and use of the SUPERHUMAN mark in connection with the promotion of 1mind's goods and services.

75. Plaintiff has not authorized 1mind to use the SUPERHUMAN mark in connection with the promotion of 1mind's goods and services.

76. 1mind's unauthorized use of the SUPERHUMAN mark is likely to cause consumers to believe that there is a relationship between 1mind and Plaintiff, that 1mind's products and services are associated with or come from Plaintiff, or vice versa, when they do not, and such association constitutes false and misleading advertising in violation of California Business & Professions Code § 17500 *et seq.*

77. 1mind's use of the SUPERHUMAN mark will permit 1mind to capitalize on Superhuman's success, goodwill, and reputation in promoting its goods and services. Further, 1mind's false and misleading advertising has harmed and is likely to continue to harm Plaintiff Superhuman by diverting business from Plaintiff to 1mind and by discouraging or frustrating potential users of Plaintiff's goods and services.

78. As a direct and proximate result of 1mind's wrongful conduct, Plaintiff has been, is now, and will be irreparably injured and damaged, and unless 1mind is enjoined by the Court, Plaintiff will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

79. 1mind has acted willfully, and Plaintiff is entitled to restitution.

## FIFTH CAUSE OF ACTION

### Common Law Trademark Infringement and Unfair Competition

80. Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

81. Plaintiff owns and enjoys valid, enforceable, and fully subsisting common law trademark rights in the SUPERHUMAN, SUPERHUMAN PLATFORM, and SUPERHUMAN GO marks in California and throughout the United States.

82. 1mind, through the conduct and violations described above, is engaging in trademark infringement and unfair competition against Plaintiff Superhuman under California common law.

83. As a direct and proximate result of 1mind's wrongful conduct, Plaintiff has been, is now, and will be irreparably injured and damaged, and unless 1mind is enjoined by the Court,

Plaintiff will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

84. 1mind has acted willfully, and Plaintiff is entitled to damages to be proved at trial.

85. 1mind's conduct, as directed by its officers and executives, has been willful and deliberate and has been undertaken with oppression, fraud, or malice, and in conscious disregard of Plaintiff Superhuman's rights, within the meaning of California Civil Code § 3294, entitling Plaintiff to exemplary damages.

**<u>REQUEST FOR RELIEF</u>**

WHEREFORE, Plaintiff Superhuman respectfully requests that the Court enter judgment against 1mind as follows:

1. Preliminarily and permanently enjoining 1mind, and all persons in active concert or participation with it, from directly or indirectly:
   - using the SUPERHUMAN mark, or any other mark, word, company name, trade name, brand name, or product name incorporating or confusingly similar to SUPERHUMAN;
   - representing by any means whatsoever that 1mind or its goods and services are associated in any way with Plaintiff Superhuman or its SUPERHUMAN mark;
   - doing any other acts calculated or likely to cause confusion or mistake in the mind of the public or to lead others to believe that 1mind's goods or services come from or are the products or services of Plaintiff Superhuman, or are somehow sponsored by or associated with Superhuman; and
   - otherwise unfairly competing with Plaintiff Superhuman or misappropriating Superhuman's reputation and goodwill.
2. Ordering 1mind to deliver up for destruction all products, packaging, labels, wrappers, signs, prints, advertisements, electronic files, and other articles bearing the infringing SUPERHUMAN mark.
3. Ordering that 1mind abandon or withdraw 1mind's applications and any other application to register SUPERHUMAN, and, pursuant to 15 U.S.C. § 1119, directing

the Director of the United States Patent and Trademark Office to refuse registration of U.S. Serial Nos. 98880288 and 99303350.

4. Awarding Plaintiff Superhuman its actual damages and 1mind's unjust and unlawful profits arising from 1mind's misconduct.
5. Ordering restitution to Plaintiff Superhuman for 1mind's unjust enrichment and unlawful gains to the detriment of Superhuman.
6. Awarding Superhuman enhanced damages of up to three times its actual damages, and such sum in addition to 1mind's profits as the Court finds just, pursuant to 15 U.S.C. § 1117(a).
7. Awarding exemplary damages in an amount to be determined at trial.
8. Awarding Superhuman its costs of suit, attorneys' fees, and reasonable expenses in this exceptional case.
9. Awarding pre- and post-judgment interest at the maximum rate allowable by law.
10. Ordering an accounting of all gains, profits, and advantages 1mind derived from its infringement and unlawful use of the SUPERHUMAN mark, and directing that such profits be paid over to Plaintiff Superhuman, pursuant to 15 U.S.C. § 1117(a).
11. Ordering 1mind to disseminate corrective notices, in a form approved by the Court, sufficient to dispel any confusion caused by its use of the SUPERHUMAN mark.
12. Requiring 1mind to file with the Court and serve on Plaintiff Superhuman, within thirty (30) days after service of any injunction on 1mind, a report in writing and under oath setting forth in detail the manner and form in which 1mind has complied with the injunction, pursuant to 15 U.S.C. § 1116(a).
13. Granting such other relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 9, 2026

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Joshua A. Baskin*
Joshua A. Baskin

Attorneys for Plaintiff Superhuman Platform Inc.

# Exhibit A

# United States of America
## United States Patent and Trademark Office

# SUPERHUMAN

**Reg. No. 5,675,657**

**Registered Feb. 12, 2019**

**Int. Cl.: 35, 38, 41**

**Service Mark**

**Principal Register**

Superhuman Labs Inc. (DELAWARE CORPORATION)
465 California Street, #1200
San Francisco, CALIFORNIA 94104

CLASS 35: Providing business information in the field of productivity and efficiency enhancement, social media and social media strategy; customer relationship management

FIRST USE 8-11-2016; IN COMMERCE 8-11-2016

CLASS 38: Electronic transmission of mail, featuring sending, un-sending, receiving, replying, forwarding, searching and scheduling of electronic mail, for the purpose of professional productivity and efficiency

FIRST USE 10-4-2016; IN COMMERCE 10-4-2016

CLASS 41: Providing online publications in the nature of journals, e-books, news articles, essays, blog posts, pod casts, and non-downloadable videos in the field of professional productivity and self-improvement

FIRST USE 8-11-2016; IN COMMERCE 8-11-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 87-023,717, FILED 05-03-2016

UNITED STATES PATENT AND TRADEMARK OFFICE · DEPARTMENT OF COMMERCE

Andrei Iancu

Director of the United States
Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** h ttp://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

1776–2026

# United States of America

## United States Patent and Trademark Office

# SUPERHUMAN PLATFORM

**Reg. No. 3,941,705**

**Registered Apr. 05, 2011**

**Amended Jun. 02, 2026**

**Int. Cl.: 42**

**Service Mark**

**Principal Register**

SUPERHUMAN PLATFORM INC. (DELAWARE CORPORATION)
475 SANSOME STREET, 19TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

CLASS 42: Internet based software, namely, providing on-line non-downloadable software that allows web-based access to applications over the Internet; [ providing online non-downloadable Internet based applications for accessing and using a cloud-computing network to subscribers in association with a specific provider and hosting providers; ] Online non-downloadable software to enable subscribers to access and exchange information and communication, namely, video clips, audio objects, emails, faxes, electronic forms, electronic documents, images, [ SMS (short messaging service), and MMS (multimedia messaging service) ] with other subscribers via a global cloud computer network

FIRST USE 09-00-2010; IN COMMERCE 09-00-2010

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "PLATFORM"

SER. NO. 77-902,661, FILED 12-30-2009

DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

1776-2026
UNITED STATES
PATENT AND TRADEMARK OFFICE
Celebrating 250 years of life, liberty, and the pursuit of innovation

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners /holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.